IKUTA, Circuit Judge,
with whom O’SCANNLAIN, CALLAHAN, and BEA, Circuit Judges, join, concurring in the denial of rehearing en banc:
The dissent from the denial of rehearing en banc neglects a salient point: Every circuit that has given a reasoned opinion on the interpretation of “conviction” in 8 U.S.C. § 1101(a)(48)(A) has reached the same conclusion as the panel does here, namely, that “[t]he term ‘conviction’ means, with respect to an alien, a formal judgment of guilt of the alien entered by a court,” regardless whether appeals have been exhausted or waived. 8 U.S.C. § 1101(a)(48)(A); see Waugh v. Holder, 642 F.3d 1279, 1284 (10th Cir.2011); Puello v. Bureau of Citizenship & Immigration Servs., 511 F.3d 324, 331-32 (2d Cir.2007); Montenegro v. Ashcroft, 355 F.3d 1035, 1037 (7th Cir.2004) (per curiam); Moosa v. INS, 171 F.3d 994, 1009 (5th Cir.1999); see also Griffiths v. INS, 243 F.3d 45, 50-51 (1st Cir.2001).
Most recently, the Tenth Circuit explained in no uncertain terms that Congress defined “conviction” in § 1101(a)(48)(A) “specifically to supplant a prior BIA interpretation that had required deportation to wait until direct appellate review (though never collateral review) of the conviction was exhausted or waived.” Waugh, 642 F.3d at 1284 (quoting United States v. Adame-Orozco, 607 F.3d 647, 653 (10th Cir.), cert. denied, — U.S.-, 131 S.Ct. 368, 178 L.Ed.2d 238 (2010)) (internal quotation marks omitted). “From this,” the Tenth Circuit concluded, “it follows that an alien is lawfully deportable as soon as a formal judgment of guilt is entered by a trial court.” Id. (quoting Adame-Orozco, 607 F.3d at 653) (internal quotation marks omitted); see also United States v. Saenz-Gomez, 472 F.3d 791, 794 (10th Cir.2007) (rejecting the argument that Congress intended the definition of “conviction” in § 1101(a)(48)(A) to require exhaustion or waiver of appeals, and instead relying on the literal language to hold that the filing of a written judgment against the petitioner constituted a “conviction” for purposes of the statute).
Other circuits have reached similar conclusions. In Puello, the Second Circuit stated: “IIRIRA did, however, eliminate the requirement that all direct appeals be exhausted or waived before a conviction is considered final under the statute.” 511 F.3d at 332. This conclusion is directly on point and identical to the panel’s conclusion here. Two subsequent unpublished opinions have reiterated this conclusion,[1] and no Second Circuit opinion has disagreed.
*1035 In Montenegro, the Seventh Circuit stated:
Before the enactment of IIRIRA, the Supreme Court required that a deportation proceeding be based on a conviction that had sufficient ‘finality,’ which we interpreted to mean that the alien no longer had any direct appeal pending. IIRIRA, however, treats an alien as ‘convicted’ once a court enters a formal judgment of guilt. IIRIRA eliminated the finality requirement for a conviction .... Under IIRIRA, therefore, Montenegro’s conviction in April 1996 of an aggravated felony rendered him removable.
Montenegro, 355 F.3d at 1037-38 (emphasis added) (internal citations omitted).
In Moosa, the Fifth Circuit considered whether Congress intended to retain the “finality requirement” that the BIA had “superimposed” on the definition of “conviction,” Moosa, 171 F.3d at 1000, and concluded that the finality requirement had been eliminated by the new statutory language of IIRIRA. Id. at 1001-02 (quoting the current version of § 1101(a)(48)(A) and concluding that it eliminated the finality requirement).
Unable to cite a single circuit court that has adopted their proposed interpretation, the dissent instead argues that we should ignore the interpretation and reasoning of our sister circuits because the statutory construction issue in those cases arose in different contexts. Dissental at 1039 n. 4. Each of our sister circuits, however, interpreted the same statutory language as the panel interpreted here. As the Supreme Court unanimously held, the same words in the same statute have the same meaning, regardless of the context. See Leocal v. Ashcroft, 543 U.S. 1, 12 n. 8, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004).
Nor does the dissent offer any persuasive justification for rejecting the reasoned decisions of our sister circuits. The dissent relies primarily on a BIA decision issued before Congress enacted the current version of § 1101(a)(48)(A), in which the BIA stated that a conviction is not final “until direct appellate review of the conviction has been exhausted or waived.” See Matter of Ozkok, 19 I. & N. Dec. 546, 552 n. 7 (B.I.A.1988). According to the dissent, the panel should have followed Ozkok, because the lack of any express statement in the legislative history that Congress rejected this finality requirement means that the panel should read it into the amended statute. Dissental at 1039-40. The dissent’s reliance on Congressional silence to construe a statute is clearly wrong: when the plain language of the statute is clear, it is improper to look for hidden meanings within the legislative history, much less within the silences of the legislative history. See Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 749, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (rejecting the argument that Congress’s failure to expressly reject judicial interpretations of an earlier version of a statute meant that Congress intended to incorporate that interpretation in the *1036 amended statute, and noting that “[o]rdinarily, Congress’ silence is just that — silence” (quoting Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 686, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987)) (internal quotation marks omitted)).
Moreover, to the extent a court might consider what Congress chose not to say, it would have to recognize that when Congress “adopted almost verbatim the definition set out by the BIA in Matter of Ozkok,” dissental at 1039, Congress chose not to include the very statement in Ozkok on which the dissent relies. Similarly, Congress also decided not to include Ozkok’s conclusion that a deferred adjudication counts as a “conviction” only if it is not subject to appeal or other proceedings. See Ozkok, 19 I. & N. Dec. at 552. In light of these silences, it is most reasonable to infer that Congress intentionally omitted any finality requirement from its definition of “conviction.” And even if it was Congress’s intent to import the Ozkok finality requirement into the statute, there is a straightforward remedy: Congress may revise the plain language of the statute.
Finally, the dissent is mistaken in asserting that the panel erred by failing to remand to the BIA to obtain its interpretation of § 1101(a)(48)(A) first. It is well established that the court, not the BIA, is responsible for statutory interpretation. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (“The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.”); Federiso v. Holder, 605 F.3d 695, 697 (9th Cir.2010) (“Only if we determine that a statute is ambiguous do we defer to the [BIA’s] interpretation. We may not accept an interpretation clearly contrary to the plain meaning of a statute’s text.”) (internal citations omitted). Because the plain language of § 1101 (a) (48) (A) is unambiguous, the panel was correct to address this issue in the first instance.[2]
In sum, the panel decided the issue before it in a manner consistent with the plain language of the statute and with all other circuits that have ruled on the issue. The panel’s approach and conclusion were correct, as was the decision of the court not to rehear the case en banc.

. See Ramirez v. Holder, 447 Fed.Appx. 249, 251 n. 1 (2d Cir.2011) (summary order) *1035 ("This court has suggested that the definition of 'conviction,' added to the immigration laws in 1996, 'eliminate[d] the requirement that all direct appeals be exhausted or waived before a conviction is considered final under the statute.' Because Ramirez’s petition is without merit even under the more favorable definition of conviction applied by the BIA, we need not here decide whether Fuello's construction should be followed.” (alteration in original) (internal citation omitted) (quoting Fuello, 511 F.3d at 332)); Alejo v. Mukasey, 292 Fed.Appx. 128, 128 (2d Cir.2008) (summary order) ("As we have explained, in 1996, Congress 'eliminate[d] the requirement that all direct appeals be exhausted or waived before a conviction is considered final.' ” (alteration in original) (quoting Fuello, 511 F.3d at 332)).

. The dissent’s claim that the panel decided this case on a basis not raised by the petitioner is baseless. Planes stated the issue before the court in his opening brief: whether "the BIA erred in determining that petitioner's federal 18 U.S.C. § 1029 offense qualified as a 'conviction' for immigration purposes because he had not yet received any sentence on his crime, thus it did not meet the requirements for a conviction under INA § 101(a)(48)(A).” In direct response to the legal issue before us, we concluded that the BIA did not err in determining that Planes’s 2004 conviction was a "conviction" for immigration purposes even though, as the BIA noted, further proceedings were pending. We agreed with the BIA's conclusion that these proceedings (which also included a further right to appeal) did not relate to whether Planes stood convicted of the crime. In re Planes, 2007 WL 416855 (B.I.A. Jan. 24, 2007) (unpublished).